EXHIBIT A

# INMATE REQUEST/GRIEVANCE

\* Inmate - Be sure to request yellow copy be given to you for your records.
Detention officer to fill out information below and give yellow copy to inmate.

**Inmate Name** Matt, Darrin

**Date** 9.10.22

**Request :** Black mold, lack of recreation, inadequate medical care, detention staff passing medications and administering insulin, being charged $10.00 for doctor visits, insect infestation, Dirty and dilapidated living conditions, Denial of access to Native American Religious Services being forced to attend christian services, overcrowding, attorney visits are ~~audio~~ audio and video recorded, inadequate Grievance procedure and dangerous ~~Correctional~~

( Attach additional pages if necessary ) police

---

## RESPONSE TO INMATE REQUEST/GRIEVANCE

**Inmate Request/Grievance received on** 10 **day of** September , 2022 **(year)**

**( Officer MUST fill in all blanks in either category A or B. )**

### A. Immediate Response:

Explain : Forward to Commanders

( Attach additional pages if necessary )

☑ Yellow copy to inmate on 10 day of, 09 , 2022 .(year)

☐ Original to permanent file on_____day of, _____, _____.(year)

### B. Referred to Supervisor: (No referral if yellow copy of this form is still attached.)

☑ **Placed in Supervisor's box on** _____ **day of** _____ , _____ .(year)

*( Referral form MUST be attached).*

**DONE** By Detention Officer DO-9 Polk on 10 day of 09 , 2022 (year)

(Please Print)

Exhibit B

## LAKE COUNTY DETENTION FACILITY
### INDIGENT COMMISSARY ORDER FORM

DATE: 01/12 / 22

CELL: A

Account Balance: $0.00

PRICES ARE SUBJECT TO CHANGE WITHOUT NOTICE.

| QTY | ITEM | PRICE |
|---|---|---|

### MONDAY ONLY

### INDIGENT COMMISSARY ORDER

### $2.54

| QTY | ITEM |
|---|---|
| 2 | 2 Stamps |
| ½ | 2 Envelopes |
| 4 | 4 Sheets Paper |
| 1 | 1 Golf Pencil |

A NEGATIVE BALANCE WILL BE MAINTAINED UNTIL PAID FOR.

12/23/2013

NAME: _____

SIGNATURE: _____

September 13, 2022

Darrin William Matt,
CSKT Tribal Member # 203-40-10045

Re: Derelict; Dereliction; of Duty,,

Require inquiry investigation on persons
of Governmental Entities Agencies within
the Erosion Flathead Nation Indian
Reservation, Confederation Salish : Kootenai
Tribes," C.S.K.T, (the Tribes) Lake County
Sheriffs offices, Ronan City Police, upon
which DOCS 1-100, will be attain upon
Subpoena (SUBPOENA) application on Current
Criminal Court Cases through Tribal
Court and Lake County District Court.

Ryan Anderson - May 24, 2021,

Jarrette Wheeler - September 24, 2021

Ann Miller - 2007 or earlier, Present.

fired, → Colton Risinger - August, 1, 2022

Tribal Prosecutor office, J. Taylor, T. Myers,

① Lake County Attorney office, Brandon M.

(Tribal) and (Lake) Courts;

Omnibus Hearing Memorandum

I. "Discovery", compliance MCA, 46-15-322
   a, b, c, d.

IV. Double Jeopardy pursuant MCA 46-11-410;
46-11-503 and 46-11-504

V. Fitness to proceed, MCA 46-14-103

VI. Mental Disease or Defect MCA 46-14-102

VII. Informant and Surveillance, MCA 46-15-322(c)
   Rule 502 of Montana Rules of Evidence
   MCA 46-15-322 (2)(a)
   Search Warrant

   Investigation Subpoena MCA 46-15-322(2)(b)

VIII. Supression Motion MCA 46-13-302; 46-13-301

IX. Motion to Dismiss; MCA 46-13-401:402,
   XII. Other Crimes, Wrongs or Acts/Transaction Evidence
   XIII. Affirmative Defense, MCA 46-15-323;
      46-15-322(6)

②

Motion To Withdraw Counsel; Gillham
Ryon Anderson, Colton Risinger,

Extreme, "Experience a hostile", response
from, Current Attorneys, mentioned
by not taking Clients request, orders,
demands, as they undermine their Client
decisions by disregarding all Clients
decisions,

Thereby going against the Client and
betrayal of trust by servicer of
public trust,

Whereas, Darrin William Matt, 203-40-10045

"Formality"; (Format); "Formalism" (contents)
Forthwith, forthcoming (Discovery) September 16,
2022, 6 pm, Lake County Detention Center Facility,
106 fourth Avenue East polson Mt 59860 (406) 883
7245,

"Formal", proper, punctilious, formalities
by public service Servants, as inconsistent
to behavioral patterns by Clients
legal representatives of the State of
Montana, by failure to comply or be
in compliance of Contract Commitment Agreement,

③

Ethical Integrity Professional Conduct Standards by inadvertently incite client to Take plea Agreements, as inclination, exhort to false pretext to obtain guilty plea; (prima facie) primary fundamental due process, deprived at will and no regard of clients concerns or Wishes, (Oppressive)(ly)(ness) asfore opposition, By all parties involved within Criminal Court proceedings, Oppressor under Govern practices of services, Thereby Breach of Contract, (obligations) Obligate, Bound By law to requirement of Contract service as a official of public Trust; Thereby client inserted Official Misconduct, and objectionable all conduct by attorneys Whereas (Moot) moralaly, ethical standards have no meaning or Value.

" Merit "(meritocracy )(irreconcilable)(hostile) by public Trust servants of Attorneys, whereas irretrievable or can not be retused.

" Due Process " intend purpose design to safeguard, Individual rights.

(4)

" Interdict ",(to prohibition suchConduct (Interject)

Inquire, formal inquiries against all persons, (inquisition) in road of Clients Due process, due to Hostile intraction with Counsel for Client, Uttermost defience vagueness or Integrity, & false pretext of communication.

Uphold professional Standards as each individual under Contract, within the State of Montana must, or shall upheld with the upmost serviceable distinguish differentiate by Client command as Attorneys, Lawyers defy and proceed to go against Client orders.

Attorney's "discrepancy", discrepant dishonorness disingentionness that furstly aspertive astranel by such unethical professional performance by Client service personal.

September 13, 2022,

Darren William Math   203-40-10045
Darren William Math

Lake County Detention Center Facility

⑤

# INMATE REQUEST/GRIEVANCE

\* Inmate - Be sure to request yellow copy be given to you for your records.
Detention officer to fill out information below and give yellow copy to inmate.

**Inmate Name** _[handwritten, illegible]_

**Date** _[handwritten]_

**Request :** _[handwritten text, largely illegible]_ Colla, B..., OPD, ...

_[several lines of illegible handwriting]_

fired, 9/13/22,

( Attach additional pages if necessary )

## RESPONSE TO INMATE REQUEST/GRIEVANCE

**Inmate Request/Grievance received on** ____ **day of** _____ , ____ . **(year)**

( Officer **MUST** fill in all blanks in either category A or B. )

## A. Immediate Response:

Explain : _[illegible handwriting]_

( Attach additional pages if necessary )

☐ Yellow copy to inmate on _____ day of, ____,_____.(year)

☐ Original to permanent file on____day of, ____,_____.(year)

## B. Referred to Supervisor:  (No referral if yellow copy of this form is still attached.)

☐ **Placed in Supervisor's box on** _____ **day of** _____ , _____ .**(year)**

*( Referral form MUST be attached).*

**DONE** By Detention Officer _[handwritten]_ on ____ day of ____ , ____ (year)
(Please Print)

Attorney for Defendant

Rhetorical question, rhetoric action o right'ness (adj 1 2) liberty (right to) due proce as Constitutional allows in one's own right; right away lawyer (Lawyerly) lay off client claims by their (attorney) laxness of ethical inte Standards, lay of the land, by which Clients superseeds all attorney decisions - (supersede)

Client supplicate, suppliant compliance by supplant supple of contract committment agreement; thereby attorney misconduct is any violation of the Montana Rules of professional Conduct. Formal Complain Ethical Misconduct;

"That the matter is " lax'ness behavior conduct committed by Attorney of the State of montana, "deceit", "dishonesty", of practice uponwhich "obligation (3) (obligate) defied by lacking Care, concern, of Client.

Attorney observance, observant, obstruct or Official Misconduct, an or obstruction, obstructive conduct behavior defy obviate
1. obviation of Ethical Standard, display betrayal of Public Trust.

Obliterate ethical standards, rules, policies, procedure, law, by individual under purlege position of govern authority powers, "obtrude", obtrusivenes of merits, rights, liberties of Clients.

Oblige compel by Contract, bound by law, whereas obviate certain occupation duties, rules, policies, contract agreement of public trust service of ethical integrity practice while under employment is the State of Montana, on The Flathead Nation Indian Reservation.

Abandoned ethical of integrity service professionalism to abduct individual dignity, liberties of the Clients, defendants under abhoirence, (abhor) indian indurdu of "the tribes," (CSKT) as this act, (abhorrent) condu is offensive practice by public trust serv (him of her) position of priurleged power of authority given under Contract Committen on agreement of employment.

2.   Absurd form practice committed une contract, unreasonable, preposterous abstra abstract by abstruse by Client lawyer or representive, (tribal) and (lake)

Abusiveness abysm abysmal conduct. Furthermore abutment moot, moralize deceitfulness of officer of the Courts.

Go through the motions, "Motion", to obtain public services to address mental health care to alleviate clients, or abate temper provoked under Custody Care of The tribes.

Alleged allegiance allegory of the tribes (Ja correctional detention center "facility", depriv client, defendant, liberties by allied w/stat and lake county, of the entities or Flathead Nation indian reservation,

Allude, allure, allusion, conduct by public trust servants, "officers", employees, almost immediately with'in Court proceedings, in a deceitfull manner, Discreditable discrepan discreteness unethical Conduct manner.

Forthrightness no regard of integrity of priviledge position of Authority power

3.

1.) Client's counsel, lawyer woefully ignor as a whole, or wholeness, disregarded in wholly, whom dutifully accept the terms of the Contract agreement of practice, technicality under Ethical standards, rules, policies, oath, of Commetment ensue entegrity of public trust servants.

opd.mt.gov/Resources/OPD Policies/Policy 110,

Deny incipient foment to exhort the client on deceitfulness tendency incisive incline client to trust but disregard Clients orders, request by oppressive action as decieveness oppressiveness against indian enduvidual Clients, or non-indian clients, of the Flathead Nation Indian Reservation.

Ordeal Counselor derelict, a dereliction deride; derissiveness towards client individual dignity.

In full, fullness govern r entities withe the Flathead Nation Indian Reservation

Assert rule of law, associate policy,

2.) procedure, protocol, lay of the land within the public servants of Flathead Nation indean reservation.

Expatiate, "do as client says", (do as I say) due "exert", exertion into due process, exhebrt client documentation, grievance court records, public records, complaint. Formal Action, as to client has to expatria on the home land of the Tribes. "Existance" under in house circumstanced, under Circumstantial deceitfulness action or act under certain Contract agreement, acknowledge ment, certainly certified signature of pen to paper, asfore Client challenges the procedure of ethical Conduct standard by subpoena application, "Legalese"; legalism, legalistically legitimize, Formal Action, attain, of all documents within Flathead Nation indean reservation, Boundiars.

Clients sovereignty, indian membershi command "ledger" of the tribes and under application, Subpoena asfore client, ask the Courts to grant subpoena; for all, persons of tribal and non tribal entities without Confusion, (persons) under Contract,

with that thereupon, "Subpoena" imply
instrument of comply order to all persons
within Governmental entities, without
delay tactics, or withstanders or withhold
any material, documents, of "the tribes
due to "entitlement," access as a Indian
membership,

With regards, with-it, Client detached
by lawyers withstander witless acts,
or conduct, thereby petition court to
withdraw, counsel, lawyer, and appoint
client right to have Attorney; With that
Client implies, full compliance, legal
bind contract of "contract", be provide
to Client, irony; bear witness to, law, in
policy, procedure, or bear witness of or to,
willfully comply Clients, demands, orders
without whensoever employed under Contra

whose liberties whole integrity process
procedure, demand full compliance of
Clients representive,

Dated: September 16, 2022
Signature Darrin William Matt
print: DARRIN William Matt

Name                    Enrollment #              A.O. #

Darrin William Matt    10045            46290

September 16, 2022, Lake County detention
Center facility, Booked in 9/8/2022, from
tribal custody Care. Due to CSKT 2-1-506
1, a & c, and I was subject abuse, neglect,
while under "the tribes", acting "under color
of law, from May 24, 2022 to Sept 8, 2022,

More info will be provided on
DC-22-285, incident thereof
John Does 1-20, plus more when
information arises,

Brendan McQuillan; bmcquillan@lakert.g

Benjamin R Anciaux

Robert J. Long; longlaw@centurtel.net

Region 1 office of the State Public Defenders
50183 US highway 93, PoBox 1150, Polson Mt 59860
opd.mt.gov/Resources/OPD Policy 110 (entire)

Tribal Holistic reentry department, defenders offic
47464 Complex BLVD, PoBox 278 Division st, Pablo Mt 59
Ann Miller-sherwood, James Taylor, Thoma
Myers,

Obtain licensed to practice, Contract
Bound by law, Commitment agreement.

Rules governing, O D C; (COP) imply
formality formalize action formerly acti
formidable deceitfulness conduct asserted
by Attorneys, Lawyers, etc.; Torte, forth
action of false, pretext, Betrayal of trust
while acting under privilege position. (Forum

Ceremonios "behavior" "acts" distinguished
descriminate conduct, towards persons of
indigenous indian blood, diversify and
diversion or divert from abusiveness acts
conduct, behavior while under Contract.

Disregarded, unworthy of public trust sen conducted in the State of Montana, and the tribes, Flathead Nation indian reservation

Disrespectfully dissatisfy by the pur trust services conducted by persons of th privilege position of authority powers

Disservices display disposition disobize disloyal service implied by dismissive disobedient representive, Council, counsele Attorneys, Lawyers, of (Lake) (Tribes) dispair disheartin by the dishonest conduct standar as discretion under attack, hostile dismes of public trust, integrity of the system of rule of Law.

Depraved, degenerate, corrupt, debased, perverted, vile against Indigenous individuals in criminal Court proceedi

Dependent on Trust, depict by integrit is debased towards indigenous people o persons of The Flathead nation indian reservation.

Attentively "attaché case" attach-ment of hard copy files of entire, as a whole, person

attainable under "subpoena", subordinate
official, officer, jailer, nurse, doctor, cook,
chain of command; subsistence of govern
practice of excersing Authority power, impe
compliance, stipulation comply order, and
not "stonewall", and leave no stone unturned
(stonemason) prepares of persons stodgy and
stealthy procedure policy standards practi

Standardize stand one's ground stand to,
stand up for, stand up to, public trust,
betrayal of trusted servants, who abuse the
position of power, Authority within "the
tribes", Flathead nation indian reservatio.

Probabilism probability, "aware of" (pros)
pertaining to a service of public trust

Pristine prism principle, on principle,
priority prior to signature of pen to pape
"prima facie" precede, precedent precept
and acknowledgement of Employee Contract
of Commitment Agreement.

"Official" (officer) officiate, officially offici
of Hostile force, or excessive force, act
actions are considered offensive or indian law
(Repugnant, abhorrent) abominable.

Occupants under The Flathead nation indi
reservation, committed violations against
rightful ownerships, "Indians", indigenous
individuals of the tribes", Hellgate treaty 18
unethical ungovernable persons of powe
of Authority.

Superiority claims fall to "indian",
supersede, city, lake, state, by enrollmen
memberships of the Tribes, (CSKT). Consiste
with Contract with the united States of Ameri

Contrary to contrast on non-natives, or
whites, caucasian, suyapi, as a whole,
in the Boundaries of the indian reservati

Dated September 14, 2022

Lake County Detention Center Facility
106 4th ave E, polson montana 59860.

Darren William Matt  203-40-10045
DARRIN William Matt  02/26/1977;  8936

Declaration, declare, declaratory, under
written format.

(1) Montana Code Annotated 2021 Vol. 7

45-7-401(1)(a)(b)(c)(d)(e)(2)(3)(4); 45-7-501(1)(a.
(b)(c)(2); 45-2-101(1-80)

Subpoena application,

Title 44 Law Enforcement ch 1-14,

Chapter 1 Highway patrol part 1, 2, 3, 4, 5, 6
44-1-101 - 612 MCA, 1103;
44-2-101-117; 201-206; 301-316;

Attain, obtain 44-2-117 MCA, definition, polic
Complaints, City of Ronan, Lake County Sher
office, deputy; (4)(a)

Subpoena 44-3-101 — 404, persons, paper
format, Hardcopies, written, notes,
44-4-401 - 404, MCA,

44-4-101-115, MCA; 44-4-401 -404 MCA,

44-4-1601 — 1609 M.C.A; 44-5-101 - 602 MCA

44-10-101 — 303 MCA, City of Ronan, lake, tribal
Subpoena; persons; and written format, har
Copies; etc, 45-2-101(1-80) MCA;

(2) 45-5-204 (1)(a)(b)(c)(2); "Tribes," M.C.A.

46-1-506 M C A, (due process art 11 17 Mont cons;
46-1-202 (1 through 30); 46-1-1204 M cA;

"46-4-112 M C A." assert, 46-4-301-304; 3.
405, 406, 407, 408,

46-5-102; —119 M C A 220, 221, 222-22
46-5-601 1-5, MCA,

26-2-103 MCA, "104;""106;" "202;" 101; 102;

26-1-902, 903; Part 8 privileges 803
807; 808, 805, 1003, 1004, 1001; 1102;

26-2-302; 301; 303; 404

Montana Rules of Evidence.

Rule 100 - 1008, implecation under scope
of subpoena application by client,
defendant;

28-2-2101 M CA; Tribal, Lake, Ronan,
27-26-101, 102; 103, M CA,
27-25-201-205, M CA,
28-10-801, 802 M CA,

(4) 46-15-303 MCA; 46-15-326 MCA,
46-15-322 MCA, requested, written forma

46-15-115 MCA, imply, application,
46-15-201(1)(2)(3)(4) MCA; 106, 107;

46-13-401 M.C.A, Motion, by client,
45-7-208 MCA, 207; 203; 202; 201; 103; 102

45-6-333 MCA; 318; 317; 309; 305; 302; 30
201, Flathead nation reservation.

45-5-634 MCA; Thomas J. Haynes,
45-5-622 MCA; 45-5-501 MCA, Casey/[am

45-5-304 MCA,

45-5-221 MCA, Tribes, Lake, Ronan;

45-5-213 MCA, September 8, 2022;
28-11-203 MCA; 28-11-202 MCA,
28-11-104 MCA; 101; 106; 108;
28-10-801 MCA; 704, 703, 702; 802; 601; 602
603, - 609; 408; 407; 422, 423, 405; 302; 101;

Written Contracts; Subpoena;

28-2-101 MCA, subpoena application

(5) 45-3-101 MCA; 45-2-101 MCA;

27-33-104 MCA, 27-27-101;102, MCA,
26-1-622 MCA, 25-40-110 MCA,

par for the course of Rule of law.

45-1-201 MCA 45-1-205 MCA
45-1-101-104 MCA.

Attainment MCA 44-13-101-103;
MCA 44-12-210; 44-11-201 MCA,
44-7-301-303, MCA, 44-7-110 MCA,
under subpoena application, imply

44-1-701-801, MCA; 44-1-301 MCA

Obtrude with subpoena application
due to "runaround" by Contract persons of entity
without any delays or excuses, sabotage a
due "ruthlessness" conduct, with no regard or
Safeguard of indiviedual Dignity,

Motion, Petition, Formal Action Complaint

September 15, 2022, CSKT #10045,
#46290 MDOC, LCDC A.

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 03-061

IN THE MATTER OF BENJAMIN R. ANCIAUX,         )
                                              )
An Attorney at Law,                           )         ORDER
                                              )
          Respondent.                         )

FILED

JUN 2 9 2005

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Respondent Benjamin R. Anciaux has filed objections to the Findings of Fact, Conclusions of Law and Recommendation of the Commission on Practice. Although he has no objection to the Commission's Findings or Conclusions, he argues that, due to the inadvertent nature of his mistake, the Recommendation of a sixty-day suspension from the practice of law is too harsh; that a private admonition, as recommended by the Special Prosecutor would be more appropriate under the circumstances.

The Special Prosecutor has responded and pointed out that, although he stands by his recommendation of a private admonition, he recognizes the Commission's concern with the fact that Respondent back-dated some file notes in order to make it appear to the Commission that he had communicated with his client, when, in fact, he had not.

Having reviewed the Commission's Findings, Conclusions and Recommendations and Respondent's objections thereto, we conclude that the recommended sixty-day suspension from the practice of law is an appropriate sanction for the violations of the Montana Rules of Professional Conduct and the Rules for Lawyer Disciplinary Enforcement. Therefore,

IT IS HEREBY ORDERED:

1. Respondent Benjamin R. Anciaux is suspended from the practice of law in the State of Montana for a period of sixty days commencing August 1, 2005.

2 Respondent shall be assessed the costs of these proceedings before the Commission on Practice. Pursuant to Rule 9(A)(8), MRLDE, Disciplinary Counsel is directed to assemble

1

1.C

and serve upon Respondent an itemized list of the costs and expenses incurred in this matter. Respondent shall then have ten days thereafter to file written objections and, if he desires, to request a hearing before an adjudicatory panel of the Commission on Practice.

3. Respondent shall comply with the notification provisions of Rule 30, MRLDE, within the time provided by that Rule. Respondent shall further comply with the remaining provisions of Rule 30(B) and 30(C), and shall remain subject to the disciplinary jurisdiction of this Court during the period of his suspension.

4. Within twenty days of the effective date of his suspension, Respondent shall further comply with Rule 32, MRLDE, by filing the required affidavits.

5. As provided in Rule 29(A), MRLDE, at the conclusion of his sixty-day suspension, Respondent Benjamin R. Anciaux may resume the practice of law by filing with the Clerk of this Court and serving upon the executive secretary of the Commission on Practice and upon Disciplinary Counsel an affidavit stating that he has fully complied with the requirements of the suspension order

6. The Clerk of this Court is directed to mail copies of this order to Respondent Benjamin R. Anciaux, by certified mail, return receipt requested, and by ordinary mail to the Special Prosecutor, the Chairman and Secretary of the Commission on Practice, to all Clerks of the District Courts of the State of Montana with the request that they provide copies to all District Judges in their Judicial Districts, the Clerk of the Federal District Court for the District of Montana, the Clerk of the Circuit Court of Appeals of the Ninth Circuit, the Office of Disciplinary Counsel and Executive Director of the State Bar of Montana.

DATED this 29th day of June, 2005.

Karla M. Gray

Chief Justice

2

1.C

W. William Leaphart

John Warner

Patricia Cotter

Jim Rice

Jeff S

Brian M

Justices

3

# CERTIFICATE OF SERVICE

This is to hereby Certify that a true and correct copy of this motion to dismiss with prejudice lack of subject matter jurisdiction over tribe. was served to the following individuals, dated this _____ day of _____ 20_____ , by USPS Mail, drop box, or hand delivery:

[ ] USPS Mail
[ ] Drop Box
[x] Hand Delivery

Lake County Clerk Of Court
106 4th Ave. East
Polson MT 59860

Benjamin Anciaux, Prosecutor
106 4th Ave. East
Polson MT 59860

_____
*Name*

_____
*Signature*

**August, 14ᵗʰ 2022**

When it comes to Lake County and its allotted land within the boundaries of the Confedreated Salish and Kootenai Tribes of the Flathead Reservation and the Confederated Salish and Kootenai Tribes and their allotted lands within the boundary lines of Lake County, There are issues about jurisdiction mainly specificlly jurisdiction in regaurding to Public Law 83-280, also known as Tribal Ordinance 40-A, 40-A(Revised).

One must in order to find the correct proper jurisdiction, One must go back to find the **error** when P.L. 83-280 was first voted in and brought about, on October, 8ᵗʰ 1965, the C.S.K.T tribal council's unlawful actions of agreeing to a cession of criminal jurisidiction to the state, violates the tribal constitution, tribal corporate charter, tribal self-governance and treaty rights of tribal sovereignty.

The Confederated salish and Kootenai Tribes, tribal Council was suppose to call on the secretary of interior to bring forth federal law, **25 U.S. Code § 5123. Organization of Indian tribes; constitution and by-laws and amendment thereof; special election.**
in order to ratifacate Tribal Constitutions and ByLaws.

On page **( 9 )** of **the constitution and bylaws of the Confederated Salish and Kootenai Tribes.**

**Article IX-Referendum. section 1.** States that Upon a petition of at least one-third **( ¹/₃ )** of the eligible voters of the Confederated Tribes, or upon the request of a majority of the members of the Tribal Council, any enacted or **Proposed Ordinance** or Resolution of the Council shall be **Submitted** to a popular referendum, and the vote of majority of the qualified voters voting in such referendum shall be conclusive and binding on the Tribal Council, provided that at least thirty percent **(30%)** of the eligible voters shall vote in such election.

**Article-X-Amendments. section 1.** States that the constitution and bylaws can and may be amended by the mojority vote of qualified voters of the Confederated Tribes voting at an election called for that purpose by **the secretary of the interior**. The Constitution once passed by the rightful requirments of tribal voters shall then be ratifacated and adopted into tribal Constitution and bylaws.

Without following any of the legal proper actions that are requierd in order to adopt new amendments and constitution into new ordinances and bylaws Public Law 83-280 also know as Tribal Ordinance 40-A, 40-A(Revised) is renderd void in all its interitys due to the error that was made within the tribes by not following there code of conducts both Federal Law and Tribal ByLaws.

To proprly fully understand one really must take the time and look at the way of how, new ordinances and amendments were adopted in And the form of how they were implimented.

From the begining of the creation of the constitution and bylaws of the Confederated Salish and Kootenai Tribes in 1935 tell the year of 1965, one will see that the Tribal Council prior to 1965 followed proper procedures and protocols by first enacting, **25 U.S. Code § 5123. Organization of Indian tribes; constitution and by-laws and amendment thereof; special election,** One can see such Amendments of proper adoptions on pages 13-22, ( of ) Constitution and ByLaws of the Confederated Salish and Kootenai Tribes of the Flathead Reservation Montana.

Through 1935 tell the year 1965 the C.S.K.T tribes abided by the bylaws and followed such form in which they were held to in order to adobt and raitifie new ordinances into bylaws, It is only then in 1965 did the Confederated Salish and Kootenai Tribes fail to implement the righful procedures by breaking there code of athics in violating the tribal constitution, tribal corporate charter, tribal self-governance and treaty rights of tribal sovereignty.

The Confederated Salish and Kootenai Tribes Tribal Council on October, 8th 1965 voted by **majority of the Council themselves.** when duing so they violated corporate charter by not following proper procdurs to adopt and ratifie, they also erred by not calling upon the Secretary of the Interior to have held such special election as required through, **25 U.S. Code § 5123.Organization of Indian tribes; constitution and by-laws and amendment thereof; special election.**

### Article III-Ratification Of Constitution And ByLaws.

States that, This Constitution and the attached Bylaws, when adopted by a majority vote of the Confederated Tribes voting at a **special election** called by **the Secretary of the Interior,** in which at least **(30)** percent of those entitled to vote shall vote, shall be submitted to the Secretary of the Interior for his approval, and shall be in force from the date of such approval.

If one was to look at the **"Session Laws Chapter 81"** they would see that there is in fact **"No resolution"** from the Confedetrated Salish and Kootenai Tribes of the Flathead Nation, With no rightful resolution the Confederated Salish and Kootenai Tribes Legally have nothing to back out of, which shows to prove further more that Tribal Ordinance 40-A, 40-A(Revised) Public Law 83-280 is unopperable and void.

One can only have their thorey about why things are the way the are between said Confederated Salish and Kootenai Tribes, Lake County and the State of Montana. The assumed assumtion of Tribal Ordinance 40-A, 40-A(Revised) follows as;

In 1993 of the 26th day of March Tribal Council Meeting minutes of, The Confederated Salish And Kootenai Tribes Of The Flathead Indian Nation, MT. Volume 93 #Number 38 #Held 26:03:93 #Approved 06:04:93 Council Chambers, Pablo,Mt.

In the tribal minutes of 1993 Patrick Smith, Tribal Attorney presented to council a resolution regarding the council's directive where they athorized the filing of litigations to enforce the fundamental voting rights of the indian people of the flathead reservation to provide for **the transfer** of **"Tribal Banking functions to Banking establishments" in counties other than "Lake County"** and for other purpuse.

### Resolution 93-122

**Section (B.)** It states that the 1987 economic census indicated the total volume sale in the retail trade and services in **"Lake County"** was about **"$114 Million in 1991 Dollars."** Total tribal-related expenditures are the equivalent of almost **"80 Percent"** of this dollar volume.

**Section (C.)** It states that the payments to "individuals" by **Tribal-related organizations Total** about **"$35 Millon in 1991."** These Payments are larger than all the income earned in agricultur, forestry, mining, and manufacturing combined in **"Lake County."** This **"tribal income"** to **"Individuals is the equivalent of almost 40 percent of the $94 Million"** paid in wages and salaries throughout **"The Lake County economy in 1990."**

It also follows as;

**WHEREAS,** the Tribes presented a very reasonable, scaled-back proposal for phased-in withdrawl from public law 280 jurisdiction which was supported by Governor Marc Racicot, Attorney General Joe Mazurek, the Senet Judiciary Committee (unanimously), the Montana Senate (40-8), and Missoula County.

**WHEREAS,** this resonable bill was defeated by the personal biases of a few individuals, in particular the Lake County Comissioners, the Lake County Sheriff, Representative John Mercer, and the membership of a Lake County-based frindge group known as all citizens Equal; and

**WHEREAS,** Contrary to Lake County's assertions, **the Tribes have made sincere efforts** to cooperate with **"Lake County"** in the past on this and other issues, but continue to **"EXPERIENCE A HOSTILE"** response from **"LAKE COUNTY"** to any effort to move forward with **tribal self-determination.**

**WHEREAS,** It is at this time that **Lake County's** elected leaders understand they **can not have it both ways** they **"can not reap all of the economic benefits of the tribal economy"** yet continue to espouse the policy of **"the termination era of the 1950's."**

With Lake County being hostile to the Confederated Salish and Kootenai Tribes in reagards to tribal self-determination, one can say that the main reason why Lake County is so Hostile about said topics is because Lake County themselves, know that legally they do not have grounds of jurisdiction to convict and try Tribal Members on the Flathead Indian Reservation, and that the hostility that they enforce with, is so that nobody will see the error, Which allows them to continue to reap all benifits that they do from the Confederated Salish and Kootenai Tribes.

With that being said if, the tribe was to retain their proper jurisdiction one can say that it would cause Two catastrophic out comes. The first is, that it in fact does undermin numerous convictions obtained by the State. The undermining of past and present convictions bring about fales imprisonment issues, which would make Lake County and the State of Montana, liable for suit for their actions and damages that they have caused, due to their unlawful assumption of jurisdiction from 1965.

The second catastrophic situation that comes about is, the factor of that all the economic benefites of the tribal economy that Lake County and the State of Montana, reaped unlawfuly would also lead them to be liable for suit do to that every dollor that the State, and Lake County obtained from the Confederated Salish and Kootenai Tribe would in fact be ill gotten gains where they victomized the Confederated and Salish Kootenai Tribes.

With that being said with this letter are the proofs of facts to show that the State of Montana and Lake County lack their grounds of jurisdiction to try and prosicute Tribal members of the Flathead Reservation and the error of the C.S.K.T Tribes of the Flathead Nation.


Thomas Alfred Lozeau III
C.S.K.T Tribal Member
Enrollment # 11146

Darren william Matt
CSKT Tribal member
Enrollment # 10045

Randall J. Lumpry
CSKT Tribal Member
# 2145495

**25 USC 5123: Organization of Indian tribes; constitution and bylaws and amendment thereof; special election**
Text contains those laws in effect on August 1, 2022

**From Title 25-INDIANS**
    CHAPTER 45-PROTECTION OF INDIANS AND CONSERVATION OF RESOURCES
**Jump To:**
    **Source Credit**
    **Miscellaneous**
    **References In Text**
    **Codification**
    **Amendments**

## §5123. Organization of Indian tribes; constitution and bylaws and amendment thereof; special election

### (a) Adoption; effective date

Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto, which shall become effective when—

(1) ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and

(2) approved by the Secretary pursuant to subsection (d) of this section.

### (b) Revocation

Any constitution or bylaws ratified and approved by the Secretary shall be revocable by an election open to the same voters and conducted in the same manner as provided in subsection (a) of this section for the adoption of a constitution or bylaws.

### (c) Election procedure; technical assistance; review of proposals; notification of contrary-to-applicable law findings

(1) The Secretary shall call and hold an election as required by subsection (a) of this section—

(A) within one hundred and eighty days after the receipt of a tribal request for an election to ratify a proposed constitution and bylaws, or to revoke such constitution and bylaws; or

(B) within ninety days after receipt of a tribal request for election to ratify an amendment to the constitution and bylaws.

(2) During the time periods established by paragraph (1), the Secretary shall—

(A) provide such technical advice and assistance as may be requested by the tribe or as the Secretary determines may be needed; and

(B) review the final draft of the constitution and bylaws, or amendments thereto to determine if any provision therein is contrary to applicable laws.

(3) After the review provided in paragraph (2) and at least thirty days prior to the calling of the election, the Secretary shall notify the tribe, in writing, whether and in what manner the Secretary has found the proposed constitution and bylaws or amendments thereto to be contrary to applicable laws.

### (d) Approval or disapproval by Secretary; enforcement

(1) If an election called under subsection (a) of this section results in the adoption by the tribe of the proposed constitution and bylaws or amendments thereto, the Secretary shall approve the constitution and bylaws or amendments thereto within forty-five days after the election unless the Secretary finds that the proposed constitution and bylaws or any amendments are contrary to applicable laws.

(2) If the Secretary does not approve or disapprove the constitution and bylaws or amendments within the forty-five days, the Secretary's approval shall be considered as given. Actions to enforce the provisions of this section may be brought in the appropriate Federal district court.

### (e) Vested rights and powers; advisement of presubmitted budget estimates

In addition to all powers vested in any Indian tribe or tribal council by existing law, the constitution adopted by said tribe shall also vest in such tribe or its tribal council the following rights and powers: To employ legal counsel; to prevent the sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe; and to negotiate with the Federal, State, and local governments. The Secretary shall advise such tribe or its tribal council of all appropriation estimates or Federal projects for the benefit of the tribe prior to the submission of such estimates to the Office of Management and Budget and the Congress.

**(f) Privileges and immunities of Indian tribes; prohibition on new regulations**

Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 et seq., 48 Stat. 984) [1] as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes.

**(g) Privileges and immunities of Indian tribes; existing regulations**

Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on May 31, 1994, and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect.

**(h) Tribal sovereignty**

Notwithstanding any other provision of this Act-

(1) each Indian tribe shall retain inherent sovereign power to adopt governing documents under procedures other than those specified in this section; and

(2) nothing in this Act invalidates any constitution or other governing document adopted by an Indian tribe after June 18, 1934, in accordance with the authority described in paragraph (1).

(June 18, 1934, ch. 576, §16, 48 Stat. 987 ; Pub. L. 100–581, title I, §101, Nov. 1, 1988, 102 Stat. 2938 ; Pub. L. 103–263, §5(b), May 31, 1994; 108 Stat. 709 ; Pub. L. 106–179, §3, Mar. 14, 2000, 114 Stat. 47 ; Pub. L. 108–204, title I, §103, Mar. 2, 2004, 118 Stat. 543 .)

EDITORIAL NOTES

## REFERENCES IN TEXT

Act of June 18, 1934 (25 U.S.C. 461 et seq., 48 Stat. 984) and this Act, referred to in subsecs. (f) and (h), is act June 18, 1934, ch. 576, 48 Stat. 984 , popularly known as the Indian Reorganization Act, which was classified generally to subchapter V (§461 et seq.) of chapter 14 of this title prior to editorial reclassification as this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 5101 of this title and Tables.

## CODIFICATION

May 31, 1994, referred to in subsec. (g), was in the original "the date of enactment of this Act", which was translated as meaning the date of enactment of Pub. L. 103–263, which enacted subsec. (g) of this section, to reflect the probable intent of Congress.

Section was formerly classified to section 476 of this title prior to editorial reclassification and renumbering as this section.

## AMENDMENTS

**2004**-Subsec. (h). Pub. L. 108–204 added subsec. (h).

**2000**-Subsec. (e). Pub. L. 106–179 struck out ", the choice of counsel and fixing of fees to be subject to the approval of the Secretary" after "To employ legal counsel".

**1994**-Subsecs. (f), (g). Pub. L. 103–263 added subsecs. (f) and (g).

**1988**-Pub. L. 100–581 amended section generally, substituting subsecs. (a) to (e) for two former undesignated pars.

STATUTORY NOTES AND RELATED SUBSIDIARIES

## DEFINITIONS APPLICABLE

Pub. L. 100–581, title I, §102, Nov. 1, 1988, 102 Stat. 2939 , provided that: "For the purpose of this Act [probably means title I of Pub. L. 100–581 which amended this section and enacted provisions set out below], the term-

"(1) 'applicable laws' means any treaty, Executive order or Act of Congress or any final decision of the Federal courts which are applicable to the tribe, and any other laws which are applicable to the tribe pursuant to an Act of Congress or by any final decision of the Federal courts;

"(2) 'appropriate tribal request' means receipt in the Area Office of the Bureau of Indian Affairs having administrative jurisdiction over the requesting tribe, of a duly enacted tribal resolution requesting a Secretarial election as well as a copy of the proposed tribal constitution and bylaws, amendment, or revocation action;

"(3) 'Secretary' means the Secretary of the Interior."

## AMENDMENT OF TRIBAL CONSTITUTION AND BYLAWS

Pub. L. 100–581, title I, §103, Nov. 1, 1988, 102 Stat. 2939 , provided that: "Nothing in this Act [probably means title I of Pub. L. 100–581 which amended this section and enacted provisions set out above] is intended to amend, revoke, or affect any tribal constitution, bylaw, or amendment ratified and approved prior to this Act."

[1] *See References in Text note below.*

Flathead Nation indian Reservation.

CSKT tribal membership, Flathead nation,
   Mothers Place of residence, Donata Healey
47293 Beaverhead lane Ronan Montana 59864
Fathers Place of residence, Thomas Cozeau,
Po Box 294 Ronan Montana 59864.


Randell S Tompsey    # 114131
47293 Beaverhead lane Ronan Mt 59869
48498 Clarice Paul lane Ronan Mt 59864


Lavin William Mall    # 10045
47293 Beaverhead lane Ronan Mt 59864,
  Po Box 294 Ronan Mt 59864,


Tribal ; 46464 Complex Blvd Division St,
(The Tribes)    Po Box 278 Pablo Mt 59855


Lake County Detention Center Facility,
104 4th ave E. Polson Mt. 59860.

Discharge Date, 5/21/2019, M,S,P,



Cell Block A.                    Sept. 18, 2022

**In Regaurds To:** Fallow up lettter to **G**ov. **G**. **G**ianforte.

On The Fith Paragraph In Lake County's Introduction Titled:

**"Lake County Is At A Breaking Point"**

The County Of Lake States That:

**"The Most Immediate Way To Fix This Crisis Is To Fix What Is Causing It."**

We must revert back to the very begining of the county of lakes letter, where it fallows as: In the early 1960's the state of montana and the "Confederated Salish And Kootenai Tribal Council." agreed to conduct law enforcement on the Flathead Reservation under a federal law known as "Public Law 280."

When it come's down to the CSK&T Tribal Council, The "Council" Themselves lack lawful jurisdiction to agree to the said agreement between State And Tribal. See Attached **"Exhibit-A".** "Where it states as fallowed:

**"Exhibit-A"**

**"25 U.S. Code § 1326-Special Election".**
With respect to both, shall be Applicable in indian country only where the enrolled indain's within the effected area of such indian country accept such jurisdiction, By the mojority voting at a Speacial Election held for that purpose.

I would also like to further more by interduceing, **"Exhibit-B,"    "Exhibit-C,"    "Exhibit-D," "Exhibit-E," "Exhibit-F,"    And    "Exhibit-G."**

**"Exhibit-B"**

**"Session ByLaw's-Chapter 81".**
In The Session ByLaw's Chapter 81, there is no "Resolution" from the <u>Flathead Nation.</u>

**"Exhibit-C"**

**Constitution And ByLaws Of The Confederated Salish And Kootenai Tribes Of The FlatHead Reservation Montana**

**"Exhibit-C-1"**

**"Article III - The Tribal Council."**
**Section 1.** The governing body of the Confederated Salish Kootenai Tribe's of the Flathead Reservation shall be the "Tribal Council."

**"Exhibit-C-2"**

**"Article IV - Nomination's And Election's"**
**Section 5.** Any member of the Confederated Tribes of the Flathead Reservation whois 21 years of age or over and who has maintained a legal residence for at least one year on th FlatHead Reservation shall be entitled to vote.

**"Exhibit-C-3"**

**"Article - VI - Power And Duties of The Tribal Council."**
**Section 4.** Any right's and power hertofore vested in the Confederated Tribe's but not expressly referred to in this constitution shall not **Abridged** by this but may be exericised by the members of the Confederated Tribe's through the "**Adoption Of Appropriate ByLaws And Constitution Amendments.**"

**"Exhibit-C-4"**

**"Article - X - Amendments"**
**Section 1.** This constitution and bylaw's maybe **Amended By A Mojority Vote of The Qualified Voter's Of The Confederated Tribe's At An Election Called For That Purpose By The Secretary Of The Interior, By One Third ($^1/_3$) Of The Qualified Voter's, Members Of The Confederated Tribe's.**

**"Exhibit-C-5"**

**"Article III - Ratifacation Of Constitution And ByLaws."**
This constitution and attached bylaws, when adopted by **A Mojority Vote** of the **Voter's** of **The Confederated Tribes** voting at a **Special Election** called by **The Secretary Of The Interior** in which **At least Thirty (30) Percent Of Those Entitled To Vote Shall Vote.**

**"Exhibit-D"**

**Amendment To The Constitution And By-Laws Of The Confederated salish And Kootenai Tribes Of The Flathead Reservation, Montana.**

**"Exhibit-D-1"**

**Constitution And ByLaws Of The Salish And Kootenai Tribes of The Flathead Reservation Montana. Amendment II.**

**"Exhibit-D-2"**

**Constitution And ByLaws Of The Salish And Kootenai Tribes Of The Flathead Reservation Montana. Amendment III.**

**"Exhibit-D-3"**

**Constitution And ByLaws Of The Salish And Kootenai Tribes Of The Flathead Reservation Montana. Amendment IV.**

In **Exhibit-D, D-1, D-2, And D-3** it show's the proper type of documntation of how **"Public Law 280"** should have been implemented however, **No** such documntation exists because the manditory procedural requirement of a **"Special Election"** to be held and decided by a **"Mojority Vote Of the Qualified Voters"** of the Confederated Tribe's pursuant to **"25 U.S. Code § 1326"** was never met, therfore rendering **"Public Law 280"** moot and void in it's entirety.

**"Exhibit-E"**

**"Tribal Ordinance 40-A-(Revised)"**
"Exhibit-E" show's **"Public Law 280"** was infact created **But** was brought about **"Illegaly"** on the
Confederated Tribes behalf. See **"Exhibit-C-5" And "Exhibit-D."**  **"Exhibit-C-5"** Article III -
Ratificacation's And ByLaws: Where it states, This Constitution and Attached Bylaws, When **Adopted By A
Mojority Vote Of The Voters** of the Confederated Tribe's **Voting At A Special Election** called by **The
Secretary Of Interior, In Which At Least (30) Percent of Those Entitled To Vote Shall Vote.**
When **"Exhibit-D" D-1, D-2, And D-3.** Shows the proper procedural requirement's that must be **Met** for
bylaws to be implemented.

**"Exhibit-E-1"**

"EXhibit-E-1" Shows that the Tribal Council **Unlawfuly Submitted "Tribal Ordinance 40-A-(Revised)** by
not fallowing proper procedure, That fallow's as. **"Exhibit-C-4" Article-X- Amendments , Section 1.
And "Exhibit-C-5" Article III- Ratification Of ByLaw's.**

**"Exhibit-E-2"**

**Unlawful Submission of Proclamation by Governor Tim Babcock on October 8th 1965.**

**"Exhibit-E-3"**

**Resolution No.   94-123**
Resolution of the governing body of the confederated salish and kootenai tribes of the flathead
reservation.

**"Exhibit-E-4"**

**"Exhibit-E-3"** was brought about **"Illegaly"** on The Confederated Salish And Kootenai Tribes behalf. See
**"Exhibit-C-5" And "Exhibit-D"**  **"Ehibit-C-5"** Article III- ratifacation's And Bylaws: Where it states, This
Constitution and Attched Bylaws, When **Adopted By A Mojority Vote Of The Voters** of the
Confederated Tribes **Voting At A Special Election** called by **The Secretary Of Interior, In Which At Least
(30) Percent of Those Entitled To Vote Shall Vote.**                              When **"Exhibit-D"
D-1, D-2 And D-3.** Shows the proper procedural requirement's that must be **Met** fo Bylaws to be
implemented.

**"Exhibit-E-5"**

**Unlawful Submission of Proclamation by Governor Marc Racicot September 30th 1994.**

Without the rightful proper procedure the submission of **"Tribal Ordinance 40-A-(Revised)."** Is has been
**Void** And **Nill, Sence "The 5th Day Of May 1965"**

**"Exhibit-F"**

On the "January 25th, 1963 judiciary committee" on the second page at the end of Steve Demures
speech, Steve Demures was asked four (4) quistions, Which is brought forth as shown and read as:

**"For the purpose of record question's were directed to Mr.Demures,"**

**Q. Is there a Flathead Kootenai Organization?**

**A. Yes, But the membership is not as large as it is set up to be "OR" they would have a greater voting affect.**

The telegram to which this questioning referred was recieved from the two mentioned therein and they proport to **"Represent Some Authority Of The Tribe."** The telegram was placed on file for the record.

One must take into concideration of the truth that even if **"25 U.S. Code § 1326 Special Election"** took place "**NOTE: That evidence show's without doubt that legaly it has not yet took place.** That the **Mojority Of Legal Aged Voter's** would not of most likely not have accord and met the proper **Legal ($^1/_3$) Qualifier's Of Voter's.**
Steve Dumers states that: **"OR" They would have a greater voteing affect.**
One may take infrom that, That there was officauly legaly not at the time enough members on the reservation to help push and pass the bill by **"Special Election"** Therefore proceding with the bill unlawfuly and illegaly.

**"Exhibit-G"**

**"Statement Of John B. Commins"**

**End**

Sincerly,

Thomas A. Lozeau III
CSK&T Tribal Member
Enrollment #11146

6-24-2022

Darrin W. Matt
CSKT Tribal member
enrollment, # 10045

COPY
9-7-22
P.O.A. - T.A. L.J.

June 24th 2022

In Montana, the county of Lake resides on and within the exterior boundries of a American Reservation known as the Confederated Tribe's of the Flathead Nation, Also known as The Confederated Salish And Kootenai Tribes.

When analyzing evidence one must consider all outcomes and must always rule properly and fairly and never unjustly, no matter if the rightful ruling has catastrophic outcomes.
When it comes to The Confederated Salish and Kootenai Tribes Of The Flathead Reservation and The County Of Lake in Montana, Theres a decision that will have major consenquences for both past and future criminal and civil cases.

**Public Law 280** also known as **Tribal Ordinance 40-A, 40-A (Revised)** is Null and Void, it has always been and it always will be, intell the proper procedures and protocols are met with the proper requierments of The Confederated Salish And Kootenai Tribal ByLaws.
**Article-X-Amendments. Section 1.** and **Article-III-Ratifacations Of Constitution ByLaws.** And The **United States** requierments of **"25 U.S. Code § 1326 Special Election."**

The catastrophic outcome to this is that it does undermine numerous convictions obtained by The State, as well as The State's ability to prosecute serious crimes commited in, **The Here And Now,** as well as in **the present future.** With that being said, there is the issue of past decisions many of them will be considered wrongful convictions because The State lacked jurisdiction.
A number of criminal defendents **Tribal and Non-Tribal,** who have been convicted past and present will have grounds to challange their convictions arguing that The State never had jurisdiction to try them.

**It is important to Note that the issue concerns jurisdiction, not land.**

When it comes down to the jurisdiction Lake County **needs not be Obdurate,** but instead **needs to be Obedient.**

With analyzing the evidence of the wrong doings, one must take into concept that the improper procedures **do not fall on current Tribal Council Nor current State Official's, but only Both from the time of the past.**
The error that comes from those decisions brings about unlawful and illegal jurisdiction issues that can be viewed as a double bladed knife that cuts deep both ways.

**To Fix The Error Is To Fix The Problem.** When the problem remains unfixed the error still countinues to be the error. Both parties, **Tribal and Non-Tribal,** need to both take responsibility for the past actions that have been playing out throughout the years from when the error first accord and generated from.

It is only then can the wrongs be properly righted, So that our Tribal People of **The Salish** And **Kootenai Tribes** can honestly truly be free and self-governing.

With that being said i pray to my creator that this letter finds you in good spirits.

Thank you for your time.

Sincerly, *Thomas A. Lozeau*

**Thomas A. Lozeau III**
**CSK&T Tribal Member**
**Enrollment #11146**

*Darrin William Matt*
Darrin William Matt
CSKT Tribal member
# 10045,

I Thomas Alfred Lozeau III,

Confederated Salish and Kootenai tribal member 11146 of the Flathead Nation of the Flathead Reservation am being detained unlawfully within the Lake County Detention Facility in Polson, MT located within the exterior boundaries of the Flathead Reservation under Cause No. DC-22-50, state charges, state custody. Therefore aggrieved. The failure of C.S.K.T. tribal council adopting a resolution to request the Secretary of the Interior call for a 25 U.S. Code 1326-Special election for the purpose of P.L. 83-280 State jurisdiction, mandatory vote of the eligible adult Indians: (a.) Tribal ordinances 40-A, 40-A (Revised) are Null and Void Ab initio as they contain no authority by majority vote of 25 U.S. Code 1326-Special election therefore inapplicable. (b.) The C.S.K.T. of the Flathead Nation remains under Federal Jurisdiction as no record exists 25 U.S. Code 1326-Special election being held, therefore state jurisdiction has never existed nor exists now. No consent has ever been attained from majority vote by the eligible adult. Indians. Mandatory.

The C.S.K.T. tribal council action to assert they and they alone contain the authority by tribal ordinances 40-A and 40-A (Revised) to "abridge" protocol violates our tribal constitution, tribal corporate charter, tribal self-governance, treaty rights, tribal sovereignty, therefore inapplicable.

C.S.K.T. Tribal Constitution-Preamble, "the power to exercise certain rights of self-government not inconsistent with Federal, State and local laws."

Article VI-Powers and Duties of the Tribal Council, Section 4.

Any rights and powers heretofore vested in the Confederated Tribes but not expressly referred to in this Constitution shall not be abridged by this article, but may be exercised by the members of the Confederated Tribes through the adoption of appropriate bylaws and constitutional amendments.

Tribal ordinances 40-A and 40-A (Revised) abridged 25 U.S. Code 1326-Special election therefore inapplicable. C.S.K.T. tribal council violated the Tribal Bylaws, Article I-The Tribal Council, Section 6. Oath of Office.

No vote to amend Tribal corporate charter under Section 10. Amendments has been held to allow P.L.83-280 control of Section 4. Management, Section 5. Corporate Powers-(b.),(i),(j.) Section 7. Corporate Property. Tribal corporate charter cannot be under state regulatory laws. Therefore P.L.83-280 is inapplicable. C.S.K.T. could not conserve and develop our lands and resources or exercise certain rights of self-government. Furthermore, our Corporate charter lands our tribal reservation land are one and the same yet they are separate.

Self Governance Compact between the Confederated Salish and Kootenai Tribes of the Flathead Nation and The United States of America.

Section 1.-Authority, "pursuant to the authority granted by Title III of P.L.100-472, as codified at 25 U.S.C. 450f," "the Tribal Council of the Confederated Salish and Kootenai Tribes" "which is authorized to transact business and act on behalf of Tribes pursuant to the Constitution and Bylaws of the Confederated Salish and Kootenai Tribes of the Flathead Nation." Section 2-Purpose-(a.)(b.)(c.)"or as authorizing or requiring the termination of the existing trust responsibilities of the United States with respect to Indian people."

Section.3-Tribal Law and Forums

Article IV-Obligations of the United States

Section 1- Trust responsibility/Solemn Obligations

(a.) "Nothing in this Compact is intended or should be interpreted to terminate, waive, modify or reduce the trust responsibility of the United States to the Tribes or individual Indians, P.L.83-280 requires a mandatory 25 U.S.Code1326-Special election be called for and held for "Consent" by a majority vote of the adult Indians" voting at a special election held for that purpose.

P.L.83-280 is a Tribal Constitutional amendment of Article I-Territory, this is where our jurisdiction and territory lands as defined in the Treaty of July 16, 1855 are contained. This action would require Article X-Amendments of Tribal Constitution. Furthermore a legal review would be required to see if the Tribal Corporate lands can be under state regulatory law. Can a amendment to the Corporate Charter to allow this action legally exist?

The Act of the Montana Legislature of February 27, 1963, Laws of Montana, 1963, Vol. 1, Chapter 81, p. 170. Section 2. Provided: "That he shall not issue such proclamation until such resolution has been

approved in the manner provided for by the charter, constitution or other fundamental law of the tribe or tribes, if said document provides for such approval." 25 U.S.Code 1326-Special Election

Protocol for "CONSENT" is 25 U.S.Code 1326-Special Election, without it "CONSENT" does not exist.

Therefore as NO CONSENT to P.L. 83-280 from 25 U.S. Code 1326-Special election results indicating the adult Indians accepted and approved state jurisdiction over them and their Territory Lands.

I request the Montana Supreme Court order my immediate release from Lake County Detention Facility and all state charges against me be dismissed with prejudice as the state contains no jurisdiction over me as an enrolled member of the C.S.K.T. of the Flathead Nation.

Thomas Alfred Lozeau III, Enrolled number 11146.

Furthermore, I request that all responses and court dates be mailed to me at the following address as Electronic Notifications will not work for me.


Thomas A. Lozeau III

P.O. Box 294

Ronan, MT 59864




Thomas A. Lozeau III

**In Regaurds To:** Fallow up lettter to **Gov. G. Gianforte.**

On The Fith Paragraph In Lake County's Introduction Titled:

**"Lake County Is At A Breaking Point"**

The County Of Lake States That:

**"The Most Immediate Way To Fix This Crisis Is To Fix What Is Causing It."**

We must revert back to the very begining of the county of lakes letter, where it fallows as: In the early 1960's the state of montana and the "Confederated Salish And Kootenai Tribal Council." agreed to conduct law enforcement on the Flathead Reservation under a federal law known as "Public Law 280."

When it come's down to the CSK&T Tribal Council, The "Council" Themselves lack lawful jurisdiction to agree to the said agreement between State And Tribal. See Attached **"Exhibit-A".** "Where it states as fallowed:

**"Exhibit-A"**

**"25 U.S. Code § 1326-Special Election".**
With respect to both, shall be Applicable in indian country only where the enrolled indain's within the effected area of such indian country accept such jurisdiction, By the mojority voting at a Speacial Election held for that purpose.

I would also like to further more by interduceing, **"Exhibit-B,"    "Exhibit-C,"    "Exhibit-D," "Exhibit-E," "Exhibit-F,"   And   "Exhibit-G."**

**"Exhibit-B"**

**"Session ByLaw's-Chapter 81".**
In The Session ByLaw's Chapter 81, there is no "Resolution" from the Flathead Nation.

**"Exhibit-C"**

**Constitution And ByLaws Of The Confederated Salish And Kootenai Tribes Of The FlatHead Reservation Montana**

**"Exhibit-C-1"**

**"Article III - The Tribal Council."**
**Section 1.** The governing body of the Confederated Salish Kootenai Tribe's of the Flathead Reservation shall be the "Tribal Council."

**"Exhibit-C-2"**

**"Article IV - Nomination's And Election's"**
**Section 5.** Any member of the Confederated Tribes of the Flathead Reservation whois 21 years of age or over and who has maintained a legal residence for at least one year on th FlatHead Reservation shall be entitled to vote.

**"Exhibit-C-3"**

**"Article - VI - Power And Duties of The Tribal Council."**
**Section 4.** Any right's and power hertofore vested in the Confederated Tribe's but not expressly referred to in this constitution shall not **Abridged** by this but may be exericised by the members of the Confederated Tribe's through the **"Adoption Of Appropriate ByLaws And Constitution Amendments."**

**"Exhibit-C-4"**

**"Article - X - Amendments"**
**Section 1.** This constitution and bylaw's maybe **Amended By A Mojority Vote of The Qualified Voter's Of The Confederated Tribe's At An Election Called For That Purpose By The Secretary Of The Interior, By One Third ($^1/_3$) Of The Qualified Voter's, Members Of The Confederated Tribe's.**

**"Exhibit-C-5"**

**"Article III - Ratifacation Of Constitution And ByLaws."**
This constitution and attached bylaws, when adopted by **A Majority Vote** of the **Voter's** of **The Confederated Tribes** voting at a **Special Election** called by **The Secretary Of The Interior** in which **At least Thirty (30) Percent Of Those Entitled To Vote Shall Vote.**

**"Exhibit-D"**

**Amendment To The Constitution And By-Laws Of The Confederated salish And Kootenai Tribes Of The Flathead Reservation, Montana.**

**"Exhibit-D-1"**

**Constitution And ByLaws Of The Salish And Kootenai Tribes of The Flathead Reservation Montana. Amendment II.**

**"Exhibit-D-2"**

**Constitution And ByLaws Of The Salish And Kootenai Tribes Of The Flathead Reservation Montana. Amendment III.**

**"Exhibit-D-3"**

**Constitution And ByLaws Of The Salish And Kootenai Tribes Of The Flathead Reservation Montana. Amendment IV.**

In **Exhibit-D, D-1, D-2, And D-3** it show's the proper type of documentation of how **"Public Law 280"** should have been implemented however, **No** such documentation exists because the manditory procedural requirement of a **"Special Election"** to be held and decided by a **"Mojority Vote Of the Qualified Voters"** of the Confederated Tribe's pursuant to **"25 U.S. Code § 1326"** was never met, therfore rendering **"Public Law 280"** moot and void in it's entirety.

**"Exhibit-E"**

**"Tribal Ordinance 40-A-(Revised)"**
"Exhibit-E" show's **"Public Law 280"** was infact created **But** was brought about **"Illegaly"** on the Confederated Tribes behalf. See **"Exhibit-C-5" And "Exhibit-D."**   **"Exhibit-C-5"** Article III - Ratifacation's And ByLaws: Where it states, This Constitution and Attached Bylaws, When **Adopted By A Mojority Vote Of The Voters** of the Confederated Tribe's **Voting At A Special Election** called by **The Secretary Of Interior, In Which At Least (30) Percent of Those Entitled To Vote Shall Vote.**
When **"Exhibit-D" D-1, D-2, And D-3.** Shows the proper procedural requirement's that must be **Met** for bylaws to be implemented.

**"Exhibit-E-1"**

**"EXhibit-E-1"** Shows that the Tribal Council **Unlawfuly Submitted "Tribal Ordinance 40-A-(Revised)** by not fallowing proper procedure, That fallow's as. **"Exhibit-C-4" Article-X- Amendments , Section 1. And "Exhibit-C-5" Article III- Ratification Of ByLaw's.**

**"Exhibit-E-2"**

**Unlawful Submission of Proclamation by Governor Tim Babcock on October 8th 1965.**

**"Exhibit-E-3"**

**Resolution No.   94-123**
Resolution of the governing body of the confederated salish and kootenai tribes of the flathead reservation.

**"Exhibit-E-4"**

**"Exhibit-E-3"** was brought about **"Illegaly"** on The Confederated Salish And Kootenai Tribes behalf. See **"Exhibit-C-5" And "Exhibit-D"**   **"Ehibit-C-5"** Article III- ratafication's And Bylaws: Where it states, This Constitution and Attched Bylaws, When **Adopted By A Mojority Vote Of The Voters** of the Confederated Tribes **Voting At A Special Election** called by **The Secretary Of Interior, In Which At Least (30) Percent of Those Entitled To Vote Shall Vote.**                              When **"Exhibit-D" D-1, D-2 And D-3.** Shows the proper procedural requirement's that must be **Met** fo Bylaws to be implemented.

**"Exhibit-E-5"**

**Unlawful Submission of Proclamation by Governor Marc Racicot September 30th 1994.**

Without the rightful proper procedure the submission of **"Tribal Ordinance 40-A-(Revised)."** Is has been **Void** And **Nill,** Sence **"The 5th Day Of May 1965"**

**"Exhibit-F"**

On the "January 25th, 1963 judiciary committee" on the second page at the end of Steve Demures speech, Steve Demures was asked four (4) quistions, Which is brought forth as shown and read as:

**"For the purpose of record question's were directed to Mr.Demures,"**

**Q. Is there a Flathead Kootenai Organization?**

**A. Yes, But the membership is not as large as it is set up to be "OR" they would have a greater voting affect.**

The telegram to which this questioning referred was recieved from the two mentioned therein and they proport to **"Represent Some Authority Of The Tribe."** The telegram was placed on file for the record.

One must take into concideration of the truth that even if **"25 U.S. Code § 1326 Special Election"** took place "**NOTE: That evidence show's without doubt that legaly it has not yet took place.** That the **Mojority Of Legal Aged Voter's** would not of most likely not have accord and met the proper **Legal ($^1/_3$) Qualifier's Of Voter's.**
Steve Dumers states that: **"OR" They would have a greater voteing affect.**
One may take infrom that, That there was officauly legaly not at the time enough members on the reservation to help push and pass the bill by **"Special Election"** Therefore proceding with the bill unlawfuly and illegaly.

**"Exhibit-G"**

**"Statement Of John B. Commins"**

**End**

**Sincerly,**

**Thomas A. Lozeau III**
**CSK&T Tribal Member**
**Enrollment #11146**

6-24-2022

Darrin W. Matt
CSKT Tribal member
enrollment, # 10045

**June 24th 2022**

COPY
9-7-22
P.O.A. - T.A. L.J.

In Montana, the county of Lake resides on and within the exterior boundries of a American Reservation known as the Confederated Tribe's of the Flathead Nation, Also known as The Confederated Salish And Kootenai Tribes.

When analyzing evidence one must consider all outcomes and must always rule properly and fairly and never unjustly, no matter if the rightful ruling has catastrophic outcomes.
When it comes to The Confederated Salish and Kootenai Tribes Of The Flathead Reservation and The County Of Lake in Montana, Theres a decision that will have major consenquences for both past and future criminal and civil cases.

**Public Law 280** also known as **Tribal Ordinance 40-A, 40-A (Revised)** is Null and Void, it has always been and it always will be, intell the proper procedures and protocols are met with the proper requierments of The Confederated Salish And Kootenai Tribal ByLaws.
**Article-X-Amendments. Section 1.** and **Article-III-Ratifacations Of Constitution ByLaws.** And The **United States** requierments of **"25 U.S. Code § 1326 Special Election."**

The catastrophic outcome to this is that it does undermine numerous convictions obtained by The State, as well as The State's ability to prosecute serious crimes commited in, **The Here And Now,** as well as in **the present future.** With that being said, there is the issue of past decisions many of them will be considered wrongful convictions because The State lacked jurisdiction.
A number of criminal defendents **Tribal and Non-Tribal,** who have been convicted past and present will have grounds to challange their convictions arguing that The State never had jurisdiction to try them.

**It is important to Note that the issue concerns jurisdiction, not land.**

When it comes down to the jurisdiction Lake County **needs not be Obdurate,** but instead **needs to be Obedient.**

With analyzing the evidence of the wrong doings, one must take into concept that the improper procedures **do not fall on current Tribal Council Nor current State Official's, but only Both from the time of the past.**
The error that comes from those decisions brings about unlawful and illegal jurisdiction issues that can be viewed as a double bladed knife that cuts deep both ways.

**To Fix The Error Is To Fix The Problem**. When the problem remains unfixed the error still countinues to be the error. Both parties, **Tribal and Non-Tribal,** need to both take responsibility for the past actions that have been playing out throughout the years from when the error first accord and generated from.

It is only then can the wrongs be properly righted, So that our Tribal People of **The Salish** And **Kootenai Tribes** can honestly truly be free and self-governing.

With that being said i pray to my creator that this letter finds you in good spirits.

Thank you for your time.

Sincerly, *Thomas A. Lozeau*

**Thomas A. Lozeau III**
**CSK&T Tribal Member**
**Enrollment #11146**

*Darrin William Matt*
Darrin William Matt
CSKT Tribal Member
# 10045,

06/30/2022

I Thomas Alfred Lozeau III,

Confederated Salish and Kootenai tribal member 11146 of the Flathead Nation of the Flathead Reservation am being detained unlawfully within the Lake County Detention Facility in Polson, MT located within the exterior boundaries of the Flathead Reservation under Cause No. DC-22-50, state charges, state custody. Therefore aggrieved. The failure of C.S.K.T. tribal council adopting a resolution to request the Secretary of the Interior call for a 25 U.S. Code 1326-Special election for the purpose of P.L. 83-280 State jurisdiction, mandatory vote of the eligible adult Indians: (a.) Tribal ordinances 40-A, 40-A (Revised) are Null and Void Ab initio as they contain no authority by majority vote of 25 U.S. Code 1326-Special election therefore inapplicable. (b.) The C.S.K.T. of the Flathead Nation remains under Federal Jurisdiction as no record exists 25 U.S. Code 1326-Special election being held, therefore state jurisdiction has never existed nor exists now. No consent has ever been attained from majority vote by the eligible adult. Indians. Mandatory.

The C.S.K.T. tribal council action to assert they and they alone contain the authority by tribal ordinances 40-A and 40-A (Revised) to "abridge" protocol violates our tribal constitution, tribal corporate charter, tribal self-governance, treaty rights, tribal sovereignty, therefore inapplicable.

C.S.K.T. Tribal Constitution-Preamble, "the power to exercise certain rights of self-government not inconsistent with Federal, State and local laws."

Article VI-Powers and Duties of the Tribal Council, Section 4.

Any rights and powers heretofore vested in the Confederated Tribes but not expressly referred to in this Constitution shall not be abridged by this article, but may be exercised by the members of the Confederated Tribes through the adoption of appropriate bylaws and constitutional amendments.

Tribal ordinances 40-A and 40-A (Revised) abridged 25 U.S. Code 1326-Special election therefore inapplicable. C.S.K.T. tribal council violated the Tribal Bylaws, Article I-The Tribal Council, Section 6. Oath of Office.

No vote to amend Tribal corporate charter under Section 10. Amendments has been held to allow P.L.83-280 control of Section 4. Management, Section 5. Corporate Powers-(b.),(i),(j.) Section 7. Corporate Property. Tribal corporate charter cannot be under state regulatory laws. Therefore P.L.83-280 is inapplicable. C.S.K.T. could not conserve and develop our lands and resources or exercise certain rights of self-government. Furthermore, our Corporate charter lands our tribal reservation land are one and the same yet they are separate.

Self Governance Compact between the Confederated Salish and Kootenai Tribes of the Flathead Nation and The United States of America.

Section 1.-Authority, "pursuant to the authority granted by Title III of P.L.100-472, as codified at 25 U.S.C. 450f," "the Tribal Council of the Confederated Salish and Kootenai Tribes" "which is authorized to transact business and act on behalf of Tribes pursuant to the Constitution and Bylaws of the Confederated Salish and Kootenai Tribes of the Flathead Nation." Section 2-Purpose-(a.)(b.)(c.)"or as authorizing or requiring the termination of the existing trust responsibilities of the United States with respect to Indian people."

Section.3-Tribal Law and Forums

Article IV-Obligations of the United States

Section 1- Trust responsibility/Solemn Obligations

(a.) "Nothing in this Compact is intended or should be interpreted to terminate, waive, modify or reduce the trust responsibility of the United States to the Tribes or individual Indians, P.L.83-280 requires a mandatory 25 U.S.Code1326-Special election be called for and held for "Consent" by a majority vote of the adult Indians" voting at a special election held for that purpose.

P.L.83-280 is a Tribal Constitutional amendment of Article I-Territory, this is where our jurisdiction and territory lands as defined in the Treaty of July 16, 1855 are contained. This action would require Article X-Amendments of Tribal Constitution. Furthermore a legal review would be required to see if the Tribal Corporate lands can be under state regulatory law. Can a amendment to the Corporate Charter to allow this action legally exist?

The Act of the Montana Legislature of February 27, 1963, Laws of Montana, 1963, Vol. 1, Chapter 81, p. 170. Section 2. Provided: "That he shall not issue such proclamation until such resolution has been

approved in the manner provided for by the charter, constitution or other fundamental law of the tribe or tribes, if said document provides for such approval." 25 U.S.Code 1326-Special Election

Protocol for "CONSENT" is 25 U.S.Code 1326-Special Election, without it "CONSENT" does not exist.

Therefore as NO CONSENT to P.L. 83-280 from 25 U.S. Code 1326-Special election results indicating the adult Indians accepted and approved state jurisdiction over them and their Territory Lands.

I request the Montana Supreme Court order my immediate release from Lake County Detention Facility and all state charges against me be dismissed with prejudice as the state contains no jurisdiction over me as an enrolled member of the C.S.K.T. of the Flathead Nation.

Thomas Alfred Lozeau III, Enrolled number 11146.

Furthermore, I request that all responses and court dates be mailed to me at the following address as Electronic Notifications will not work for me.


Thomas A. Lozeau III

P.O. Box 294

Ronan, MT 59864




Thomas A. Lozeau III